IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALEXIS HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:14-cv-917-WKW-WC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     INTRODUCTION**

Alexis Hicks ("Plaintiff"), filed an application for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*.[1] Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff amended her alleged onset date to June 8, 2011, the filing date of her supplemental security income application. Tr. 13, 34. Following the hearing on October 18, 2012, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of June 8, 2011, through the date of the decision, February 19, 2013. (Tr. 23-24, 31). The Appeals Council denied Plaintiff's request for review. Tr. 2. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now

---

[1] Plaintiff also filed an application for disability insurance benefits under Title II of the Act. She withdrew her request for disability insurance benefits because she did not have disability insured status on the amended onset date. (Tr. 13, 34).

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human

before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), this case was referred to the undersigned Magistrate Judge for all pretrial proceedings as well as a report and recommendation.  Based on the undersigned's review of the record and the briefs of the parties, the undersigned recommends affirming the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or call a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla, but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) ("'Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.'") (alteration added). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam).

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was 29 years old on the alleged onset date and 30 years old at the time of the hearing before the ALJ. Tr. 22. The ALJ found Plaintiff has no past relevant work, and that, consequently, transferability of jobs was not an issue. Tr. 22. Plaintiff has at least a high school education. Tr. 22. Following the administrative hearing and employing the five-step process,

4

the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since June 8, 2011, the alleged onset date." Tr. 15. At Step Two, the ALJ found that Plaintiff suffers from the severe impairments of "Crohn's disease, status post bowel resection, and with a history of B12 deficiency and anemia; asthma; allergic sinusitis and bronchitis with headaches; obesity; diffuse arthritis in hands and wrists; bilateral wrist synovitis; and chondromalacia patella." Tr. 15. The ALJ then found at Step Three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 15. Next, the ALJ found that Plaintiff has the RFC to perform medium work with the following limitations: "lifting and carrying is reduced to light weight levels in the left dominant hand/wrist with only occasional fingering with the left upper extremity. She can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. She needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." Tr. 16.

Following the RFC determination, the ALJ found at Step Four that Plaintiff has no past relevant work. Tr. 22. At Step Five, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and having consulted with a VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a))." Tr. 22-23. The ALJ identified the following occupations as examples: "cafeteria attendant," "inspector," and "laundry classifier." Tr. 23. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 8, 2011, through the date of th[e] decision." Tr. 23.

**IV.    PLAINTIFF'S CLAIMS**

Plaintiff presents four main issues for this court's consideration in review of the ALJ's decision, and some of the subparts overlap:[6]

> 1."WHETHER IMPROPER LEGAL STANDARDS WERE USED IN EVALUATING PLAINTIFF'S CLAIM," Pl.'s Br. (Doc. No. 12 at 6), including whether the ALJ made a single, conclusory statement that Plaintiff was not credible, whether the ALJ failed to give more weight to treating physicians, whether the ALJ incorrectly assumed Plaintiff left her last job for non-Crohn's-related reasons, whether the medical evidence is consistent with Plaintiff's treating source, and whether the ALJ failed to address Plaintiff's testimony in the decision, *id.* at 6-8;
>
> 2. "WHETHER THE COMMISSIONER ERRED AS A MATTER OF LAW IN EVALUATING THE IMPACT OF PLAINTIFF'S D[E]BILITATING DISEASE ON HER ABILITY TO PERFORM WORK," *id.* at 9 (alteration added), including whether the ALJ erred in evaluating the severity of Plaintiff's multiple impairments and whether the testimony of the VE covers all of Plaintiff's functional limitations, *id.* at 9-10;
>
> 3. "WHETHER THE ALJ COMMITTED REVERSIBLE ERROR IN FAILING TO OBTAIN ME [sic] TESTIMONY REGARDING WHETHER PLAINTIFF'S IMPAIRMENTS ARE MEDICALLY EQUAL TO A LISTING LEVEL

---

[6] The undersigned here notes the general insufficiency of Plaintiff's brief in support of her complaint. Plaintiff's arguments are mostly bare and conclusory, and she mostly fails to cite even to the transcript of administrative proceedings in support of her claims. For example, Plaintiff claims "[m]ore weight was not given to Ms. Hick's treating source(s)[,]" Pl.'s Br. (Doc. No. 12) at 7, but she fails to identify and describe any treating source opinion which was not properly recognized by the ALJ. Elsewhere, Plaintiff claims the ALJ failed to review and consider her testimony at the hearing, and failed to explain his credibility findings about her testimony. *Id.* at 8. As will be discussed later in this Recommendation, this argument is patently inaccurate. Plaintiff accuses the ALJ of failing to properly evaluate "the severity of Plaintiff's multiple impairments[,]" *id.* at 9. To support her argument, however, she only refers to the fact that she has carpal tunnel syndrome and Crohn's Disease, two impairments which the ALJ in fact found to be severe. Plaintiff points to no evidence that the impairments are more severe than already determined by the ALJ. Plaintiff faults the ALJ for "substituting his own judgment for the judgment of medical, psychological or vocational professional." *Id.* at 10. But, again, she does not identify any professional "medical, psychological, or vocational" opinion which is more restrictive than the RFC articulated by the ALJ. Plaintiff's threadbare and conclusory arguments are insufficient to demonstrate error by the ALJ and have forced both the Commissioner (*see* Def.'s Br. (Doc. No. 15) at 6 n.4) and the court to attempt to divine the intent of her claims while responding to her brief.

IMPAIRMENT," *id.* at 10; and

4. "WHETHER THE ALJ COMMITTED REVERSIBLE ERROR IN FAILING TO RESOLVE INCONSISTENCIES IN THE RECORD," *id.* at 11, including whether the decision addresses the medical evidence regarding the limiting effects of her diarrhea on her ability to perform work-related functions, whether the ALJ erred in stating he would expect a person with Crohn's disease to have difficulties with weight loss but Plaintiff's BMI is 31.75, whether the symptoms of Crohn's disease apply to Plaintiff, and whether the ALJ should have recontacted a medical source to determine why Plaintiff had not lost weight, *id.* at 11-13.

The court will first address Plaintiff's fourth and third arguments concerning Step Three, that is, whether Plaintiff medically equals a listing. The court will then address Plaintiff's remaining arguments.

## V.   DISCUSSION

### A.   *Whether Plaintiff's Impairments Medically Equal a Listing*

Plaintiff argues the ALJ and the Appeals Council erred by failing to require medical expert (ME) testimony to evaluate the severity of her impairments and whether her impairments medically equal a listing. Pl.'s Br. (Doc. No. 12) at 10-11. The court first observes that Plaintiff's argument lacks supporting facts or law, and it can be deemed waived on that basis. *Cf. Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived . . . ."). Plaintiff makes only conclusory arguments suggesting that her impairments equal a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria" and that "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("the claimant must present medical evidence which describes how the impairment has such an equivalency") (citation omitted).

Although Plaintiff does not identify any particular impairments, later in her brief, while discussing her weight gain, Plaintiff argues the symptoms of Crohn's disease in Listing 5.06 apply to her, and the ALJ should have recontacted a medical source or requested a medical source statement to determine why Plaintiff had not lost weight despite her diarrhea. Pl.'s Br. (Doc. No. 12) at 12-13. Plaintiff testified that she needs to go to the bathroom six to eight times during the workday, that it takes about fifteen minutes each time, that her problem on the job was her "Crohn's, the bathroom breaks," and that she "was taking too many breaks." Tr. 19, 43, 53. On October 16, 2012, Plaintiff's treating physician, Dr. Bianchi, noted that Plaintiff was 64 inches and weighed 185 pounds, with a body mass index ("BMI") of 31.75. Tr. 411. On August 11, 2011, Plaintiff's weight was 180.25 pounds. Tr. 236. Plaintiff states that her "weight gain appears to be an issue for the ALJ," who stated that he would expect a person with constant diarrhea "to see difficulties with weight loss but her BMI is 31.75." Pl.'s Br. (Doc. No. 12) at 13; Tr. 20. Plaintiff maintains that the steroids she took for her Crohn's disease caused her weight gain, and under Listing 5.06, a person "'*may* also have signs or laboratory findings indicating malnutrition, such as weight loss .'" Pl.'s Br. (Doc. No. 12) at 13 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.00(E)(2)).

The listing for Crohn's disease requires a claimant to show:

5.06 Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period.
OR
B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:
1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two

8

      evaluations at least 60 days apart; or

      2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

      3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

      4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

      5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or

      6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06.

      Plaintiff states that some of the symptoms of the Crohn's disease listing apply to her. Pl.'s Br. (Doc. No. 12) at 12-13. A review of the evidence demonstrates, however, that Plaintiff's colonoscopy did not reveal bowel obstructions described in 5.06(A), and she did not have at least two of the following as required in 5.06(B): hemoglobin level of less than 10.0 g/dL, an albumin level of 3.0 g/dL or less, abdominal mass with pain, perineal disease, weight loss, or supplemental nutrition need. Tr. 232-38, 242-66, 276-413.

      It is necessary to recontact[7] a medical source only when "'the record reveals evidentiary gaps

---

[7]Pursuant to new regulations, which were in effect at the time of Plaintiff's hearing and the ALJ's decision, the ALJ now has discretion to decide whether to recontact a treating source as the first step in resolving an inconsistency or insufficiency in the evidence. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651-01 at 10,652 (eliminating 20 C.F.R. § 416.912(e) and adding 20 C.F.R. § 416.920b; eliminating 20 C.F.R. § 404.1512(e) and adding 20 C.F.R. § 404.1520b)). Under the revision, the ALJ must take at least one of the following steps: (1) recontact the treating physician or other medical source, (2) request additional existing records, (3) request a consultative examination, or (4) ask the claimant or others for more information. 20 C.F.R. §§ 404.920b(c)(1)-(4), 416.920b(c)(1)-(4). The new regulations "do not alter an adjudicator's obligations," and the agency "expect[s] that adjudicators will often contact a person's medical source(s) first." How We Collect and Consider Evidence of Disability, 77 Fed. Reg. at 10,652 (Feb. 23, 2012).

which result in unfairness or clear prejudice.'  The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'" *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (alteration in original) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  An ALJ is "not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is unnecessary."  *Wind v. Barnhart*, 133 F. App'x 684, 693 (11th Cir. 2005) (citation omitted); *see also* SSR 96-6P, 1996 WL 374180 (S.S.A. July 2, 1996) (updated medical expert opinion required "[w]hen no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments") (footnote omitted) .

Here, the ALJ was not required to recontact a medical source or a medical expert.  Even if Plaintiff's weight gain was caused by steroids, she fails to satisfy the other requirements of the listing.  The ALJ relied on a sufficiently developed record, including her treatment history, medical records from over half a dozen treating or examining physicians, and her activities of daily living, to determine that her impairments, singly or in combination, did not meet or equal a listing, and that the evidence did not support Plaintiff's allegations of disability. (R. 16-18, 184-93, 234-65, 274-413).

### B.     Legal Standards

#### 1.     Credibility

Plaintiff argues the ALJ used improper legal standards in evaluating Plaintiff's credibility, and she suggests the ALJ "'ma[d]e a single, conclusory statement that'" Plaintiff's allegations were considered but were not credible.[8] Pl.'s Br. (Doc. No. 12) at 6 (citation omitted). Plaintiff states she testified about her Crohn's disease, previous surgery, carpal tunnel syndrome of her dominant hand, and symptoms of asthma, but the ALJ did not detail her testimony or give explicit reasons for discrediting it. *Id.* at 8. In fact, the ALJ's decision recounts Plaintiff's testimony at length. Tr. 19. The ALJ found Plaintiff "partially credible" and that her "functional limitations are not as significant and limiting as has been alleged by the claimant." Tr. 21. In particular, the ALJ determined that Plaintiff's reported daily activities and abilities are not consistent with her complaints of completely "disabling symptoms and limitations." Tr. 21. It is evident that, multiple times in the decision, the ALJ addressed Plaintiff's credibility, and her argument to the contrary is without merit. Tr. 20-22.

#### 2.     Treating Source Opinions

Plaintiff further argues that the ALJ did not give more weight to her treating source opinions and instead "relied primarily on the non-examining state agency doctor whose report was not even complete." Pl.'s Br. (Doc. No. 12) at 7.

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted). In addition, "the ALJ must state with particularity the weight given

---

[8] Plaintiff also argues the ALJ failed to address the testimony of Plaintiff and her husband. Pl.'s Br. (Doc. No. 12) at 8. However, Plaintiff's husband did not testify (Tr. 30-64), and the court will not further address this argument.

11

to different medical opinions and the reasons therefor." *Id.* (citation omitted). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Plaintiff does not identify any treating source opinion in the record which the ALJ did not properly evaluate, and she does not explain how the report by Samuel H. Chastain, M.D., the state agency doctor (Tr. 266-74), was incomplete. The ALJ plainly canvassed the medical records from the treating physicians in the record (Tr. 17-22), and his statement that "[n]o medical expert has concluded that the claimant's impairments meet or equal a listed impairment," is supported by the record. Tr. 15-16. The ALJ further stated, "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision." Tr. 22. In fact, the ALJ's RFC determination was even more restrictive than the opinion of Dr. Chastain. Tr. 22. Plaintiff does not identify any particular medical opinion that the ALJ rejected, and it is clear from the record that the ALJ did not reject any opinion of Plaintiff's treating and examining physicians. As such, no reversible error occurred regarding the weight given Plaintiff's treating physicians.

### 3. *Reason for Leaving Job*

Plaintiff argues the ALJ assumed she left her recent temporary work for reasons connected to her testing positive for cocaine and marijuana. The ALJ stated, "She testified that she was fired [in January 2011] because of her diarrhea but medical records show she test[ed] positive for cocaine and marijuana [in May 2011] the month before she filed for SSI, which certainly suggests she has been terminated for non-C[]rohn's related reasons (Exhibit B3F pg 2). These factors diminish

credibility." Tr. 22 (alterations added). Plaintiff maintains that her testimony "that she left the employment due to her frequent bathroom breaks is clear. The statement is consistent with her diagnosis. . . . The ALJ did not request further evidence regarding Ms. Hicks last employment." Pl.'s Br. (Doc. No. 12) at 7.

The medical evidence shows that shortly before her alleged onset date of June 8, 2011, Plaintiff was admitted to the hospital on May 25, 2011, and at the hospital, she tested positive for cocaine and marijuana. Tr. 244. Plaintiff discharged on May 27, 2011, with a diagnosis of acute bronchitis with chest pain, borderline iron deficiency anemia, polypharmacy vitamin B-12 deficiency, and pernicious anemia. Tr. 244. At the hearing, Plaintiff testified she "always lose[s] a job because [she] can't control the diarrhea." Tr. 52. Plaintiff testified that she last worked in January 2011, making boxes for Russell Corporation, but she was let go because she was taking too many breaks. Tr. 52-53.

The ALJ found that Plaintiff had medically determinable impairments, but he found her statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. 20. Even omitting the ALJ's statement suggesting that she lost her job for non-Crohn's related reasons, the ALJ listed other reasons supported by substantial evidence in the record for finding that Plaintiff was not entirely credible as to the functional limitations from her Crohn's disease, and diarrhea in particular. *Cf. Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that harmless error applied to ALJ's erroneous statements of fact that had no bearing on final determination). The Court of Appeals for the Eleventh Circuit has articulated its "pain standard," governing the evaluation of a claimant's subjective testimony about pain, as follows:

In order to establish a disability based on testimony of pain and other symptoms, the

> claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "Thus, the ALJ must determine: first, whether there is an underlying medically determinable impairment that could reasonably be expected to cause the claimant's pain or other symptoms; and second, the intensity and persistence of the symptoms and their effect on the claimant's work." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 765 (11th Cir. 2014) (citing 20 C.F.R. § 416.929(a), (c)). The ALJ evaluates the "claimant's subjective testimony of pain" only after the claimant satisfies the first and one of the alternate portions of the second prong of the pain standard. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Eleventh Circuit has explained that, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.* at 1561. Importantly, it is only evidence of the underlying condition which could reasonably be expected to cause pain, not evidence of actual pain or its severity, which must be presented by the claimant to satisfy the "pain standard." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Hill v. Barnhart*, 440 F. Supp. 2d 1269, 1272-73 (N.D. Ala. 2006). After making these determinations, the ALJ must then proceed to consider the claimant's subjective testimony about pain, and the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ finds the claimant's subjective testimony not credible, the ALJ "must articulate explicit and adequate reasons for doing so," and failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.

The ALJ described Plaintiff's medical treatment, which he found "is not supportive of the claimant's testimony that she is suffering from constant diarrhea and cramps related to Crohn's disease." Tr. 20. Plaintiff had a bowel resection in 2003, and the ALJ stated the medical evidence indicates she "has been diagnosed with Crohn's disease, status post bowel resection, with a history of B12 deficiency and anemia." Tr. 20. The ALJ went on to describe the records of Dr. Voreis, who noted in May 2011 that Plaintiff had not been on medication for Crohn's disease for several years; a colonoscopy in August 2011 that showed some signs of disease but no stenosis or blockages; evidence that Plaintiff had no weight loss that the ALJ stated he would expect to see with the severity of diarrhea Plaintiff alleged; records from Dr. Widhani in July 2012 that indicated Plaintiff's last checkup was five months earlier; records from Dr. Bianchi that described Plaintiff as normally developed, well nourished, and healthy appearing; the absence of any emergency room treatment or hospitalization in the past year for Crohn's disease; and other medical records reporting her appearance as well nourished. Tr. 20. The medical records support the ALJ's statements. *See* Tr. 245, 264-65, 284, 292, 306, 310, 315, 341, 344, 349. For example, Dr. Bianchi noted on August 3, 2011, that Plaintiff denied diarrhea and her weight had been stable, and he recommended a colonoscopy and B12 shots. Tr. 264-65. Dr. Voreis noted on June 21, 2011, that his impression was of "Crohn's disease flare with vomiting" (Tr. 254), but by August 11, 2011, that Plaintiff's diarrhea was "beginning to slow down with prednisone, Azulfidine and Lomotil." Tr. 292. Dr. Widhani noted on August 30, 2012, that Plaintiff "does get diarrhea *at times*." Tr. 349 (emphasis added). Plaintiff does not identify what medical records support her statement regarding the limiting effect

of her Crohn's disease.[9]  In addition, the ALJ also identified activities of daily living that are inconsistent with the degree of limitation Plaintiff claimed, and Plaintiff does not directly challenge the ALJ's finding that her activities of daily living reflect functional limitations that are not as significant and limiting as Plaintiff alleged.[10]  Tr. 21.  The ALJ's "explicit and adequate reasons" based on the objective medical evidence and other evidence of record sufficiently indicate that he considered Plaintiff's medical condition as a whole in making the credibility determination.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (holding ALJ made a reasonable decision

---

[9]The ALJ also observed Plaintiff was not entirely compliant with taking prescribed medications.  Tr. 22.  Although Plaintiff did not testify regarding her ability to afford treatment at the hearing, Plaintiff does not argue that the ALJ erroneously relied solely on her noncompliance, that Plaintiff's poverty excuses her noncompliance, or that the ALJ failed to find that Plaintiff's ability to work would have been restored if she followed prescribed treatment.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988) ("refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," but "poverty excuses noncompliance" when noncompliance is sole ground for denial of benefits).

[10]The ALJ listed activities such as taking care of a young child, personal care, preparing meals, washing dishes and laundry, cleaning windows, using public transportation, shopping twice a month for three to four hours, taking care of finances, taking her son to the park, socializing, going to church, talking on the phone with friends, and visiting with friends.  Tr. 21.  In *Davis v. Colvin*, No. 2-13-CV-413-CSC, 2014 WL 2136023, at *3 (M.D. Ala. May 22, 2014), where the claimed disability was based on irritable bowel syndrome, the court reversed an ALJ's decision to discredit the claimant's testimony as inconsistent with medical evidence and claimant's daily activities because "[a] person who is caring for herself, performing household tasks or shopping for groceries can take frequent, unplanned breaks whenever she wants to.  However, as the vocational expert testified in this case, that is not true in a work setting."  *Id.*  The court held, "the ALJ failed to fully develop the record with regard to the impact of the plaintiff's diarrhea on her ability to perform work and failed to develop the record regarding the plaintiff's financial ability to obtain medical treatment for her condition."  *Id.* at *5.  Unlike *Davis*, the ALJ in Plaintiff's case relied on medical evidence showing that Plaintiff simply did not have frequent diarrhea. In other words, the ALJ made "a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Foote*, 67 F.3d at 1559 (citation and quotation marks omitted). Consequently, any error the ALJ made in listing activities of daily living as grounds to find her not credible are harmless. *Cf. Diorio*, 721 F.3d at 728 (applying harmless error standard).

16

to conclude a claimant's "subjective complaints were inconsistent with his testimony and the medical record" after considering claimant's "activities of daily living, the frequency of his symptoms, and the types and dosages of his medications").

### C. *Evaluating the Impact of Plaintiff's Disease on Her Ability to Work*

Plaintiff argues the hypothetical questions posed to the VE "do not cover the limitations resulting in the prescription medication Plaintiff takes," though Plaintiff does not identify what records support her statement. Pl.'s Br. (Doc. No. 12) at 9. Plaintiff further argues the hypothetical to the VE should have included a flexible work schedule and "her level of absenteeism." *Id.* at 9.

The ALJ found, and the medical evidence demonstrates, that "the medical records, such as office treatment notes, do not corroborate those allegations [of prescription side effects] in terms of any chronic debilitating side effects." Tr. 22 (alteration added). The ALJ also reasonably determined that Plaintiff's statements regarding the limiting effects of her impairments were only partially credible, including her statement that her diarrhea causes her to take six to eight breaks a day, and each lasts fifteen minutes. Tr. 20. "[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported," consequently, the ALJ did not err in relying on the VE's response to a hypothetical that did not include the effect of her prescription medication, flexible work schedule, and absenteeism. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

### VI.  CONCLUSION

Upon review of the record as a whole, the undersigned Magistrate Judge concludes that the Commissioner's decision is supported by substantial evidence and a proper application of the law. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the decision of the

17

Commissioner be AFFIRMED.

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **September 29, 2015**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 15th day of September, 2015.

                                      /s/ Wallace Capel, Jr.
                                      WALLACE CAPEL, JR.
                                      UNITED STATES MAGISTRATE JUDGE